c

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| FRED EPPERSON, *ET AL.*, Plaintiffs | CIVIL ACTION NO. 1:21-CV-00155 |
| VERSUS | JUDGE JOSEPH |
| DRESSER, LLC, *ET AL.*, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is a Motion to Remand (ECF No. 14) filed by Plaintiffs Fred J. Epperson ("Epperson"), Brooksy Semple ("Semple"), and Stephen Kohara ("Kohara") (collectively, "Plaintiffs"). Plaintiffs seek remand for lack of diversity of citizenship. Defendants[1] oppose. ECF No. 25.

Because the Louisiana Department of Environmental Quality ("LDEQ") and Dereck Descant ("Descant") were improperly joined and there is complete diversity among the properly joined parties, Plaintiffs' Motion to Remand (ECF No. 14) should be DENIED.

---

[1] Defendants Dresser, L.L.C., Dresser RE, L.L.C., Baker Hughes Holdings, L.L.C., Baker Hughes, Inc. (improperly named as "Baker Hughes Inc., a GE Company") (now known as Baker Hughes Holdings, L.L.C.), Baker Hughes, a GE Company, L.L.C. (now known as Baker Hughes Holdings, L.L.C.), Baker Hughes Company, GE Oil & Gas, L.L.C. (now known as Baker Hughes Energy Services, L.L.C.), GE Oil & Gas, Inc. (now known as Baker Hughes Energy Services, L.L.C.), CFC Holdings, L.L.C. (improperly named as "CFC Holdings, Inc.," a nonexistent entity), and EHHC NewCo, L.L.C. are collectively referred to herein as "Dresser." Halliburton Energy Services, Inc. ("Halliburton") and General Electric Company and GE Oil & Gas US Holdings I, Inc. ("GE Defendants") are also parties to the Opposition. For the purpose of this ruling, Dresser, Halliburton, and the GE Defendants are collectively referred to herein as "Defendants."

I.    Background

On December 30, 2020, Plaintiffs filed suit in the Ninth Judicial District against Defendants, LDEQ, and Descant.  ECF No. 1-2 at 2.  Plaintiffs allege that the "corporate defendants" owned, operated, or are responsible for the Flow and Process Technology Facility located at 8011 Shreveport Highway, Pineville, Louisiana (the "Dresser Facility" or "Facility").  *Id.* at 3.  Descant was the Environmental, Health, and Safety Manager at the Dresser Facility.  *Id.*

In 2012, Defendants began sampling the water and soil at the Dresser Facility, analyzing it for Total Petroleum Hydrocarbons.  *Id.*  LDEQ insisted that Defendants perform analysis of all soil and groundwater samples for full-scan volatile organic compounds.  *Id.*  Defendants have been monitoring the Trichloroethylene ("TCE") contamination in the soil and groundwater samples ("the Spill") since at least 2014.  *Id.*  Plaintiffs allege they were first notified that their land was contaminated with TCE in early 2020.  *Id.* at 4.  They assert the public was not warned prior to March 2020 that the area surrounding the Dresser Facility was contaminated with TCE.  *Id.*  Plaintiffs contend that sampling performed by contractors showed TCE contamination to the groundwater and shallow soil gas to Plaintiffs' properties.  *Id.*

Plaintiffs allege Defendants knew or should have known that their day-to-day operations at the Dresser Facility would cause the soil, surface waters, and groundwater of Plaintiffs' properties to be contaminated with toxic substances, including TCE.  *Id.*  Plaintiffs aver Defendants concealed the contamination and

failed to responsibly and timely remove or remediate the toxic pollution, allowing it to migrate and spread. *Id.*

Plaintiffs claim Defendants were negligent under La. Civ. Code art. 2315. *Id.* They allege Defendants had a duty to protect them and their property from the effects of the contamination. *Id.* Plaintiffs also claim that Defendants had the obligation to remediate the contamination, to stop its spread, and to warn Plaintiffs. *Id.* They contend Defendants violated their own company policies, industry practice and custom, and applicable state regulations. *Id.*[2] Plaintiffs further aver Defendants had a duty to remedy past wrongs of businesses acquired or predecessors under Louisiana's continuation doctrine. *Id.* at 6.

Plaintiffs also assert claims against Defendants under La. Civ. Code arts. 667, 2317, and 2322. *Id.* They allege Defendants had *garde* of the facilities and equipment that caused the pollution. *Id.* Defendants' acts constituted wanton or reckless disregard for public safety warranting punitive and exemplary damages, in Plaintiffs' view. *Id.* at 7. Moreover, Plaintiffs contend that Defendants' storage and disposal of the toxic and hazardous substances constitutes an ultrahazardous activity for which Defendants' are strictly liable. *Id.*

Plaintiffs allege Defendants owed them a duty of care to contain the TCE to its property – a duty delegated to Descant. *Id.* at 10. Plaintiffs allege Descant was negligent in failing to keep the toxic substances contained to the Site. *Id.*

---

[2] Plaintiffs also allege Defendants are liable for continuing tort, trespass, and nuisance as the pollution continues to migrate and cause increasing damages. *Id.*

Plaintiffs allege Dresser notified LDEQ of the leakage from the Dresser Facility on June 28, 2012. *Id.* By 2014, Dresser first reported to LDEQ its analysis of all soil and groundwater samples for full-scan volatile organic compounds. *Id.* Plaintiffs assert that LDEQ knew or should have known that the TCE from the Dresser Facility had "off-site impact." *Id.* at 11.

According to Plaintiffs, LDEQ first notified Plaintiffs in 2020 of the off-site impacts that posed a significant risk of adverse effects to their health. *Id.* LDEQ is now requiring Defendants to monitor the air in residential areas to detect TCE vapors. *Id.* Plaintiffs allege LDEQ violated its mandatory duty under La. Admin Code. tit. 33, Pt I, § 109, to issue notice to them within 30 days of its knowledge that the Spill posed a significant risk of adverse health effects to Plaintiffs. *Id.* at 3. They contend this duty is non-discretionary. *Id.* LDEQ had another non-discretionary duty to inspect the Dresser Facility after 2012 to ensure the contamination did not migrate and the waste disposal procedures were adequate. *Id.* at 12. Plaintiffs allege LDEQ's acts or omissions caused them to sustain property damages and personal injuries. *Id.*[3]

Plaintiffs seek damages for a complete and scientific analysis of the extent and nature of the contamination of their property; the cost to restore the property to its pre-polluted original condition; punitive or exemplary damages; damages for

---

[3] Plaintiffs state they make no claim under the Environmental Quality Act, La. R.S. 30:2001, *et seq.* (the "Act"), which they claim is inapplicable here. *Id.* at 9. Plaintiffs further state they do not assert any claims under federal law, and to the extent any state claims are preempted by federal law, that no such claims have been alleged. *Id.*

Defendants' unauthorized use of Plaintiffs' land to store and dispose of waste; stigma damages for diminution of property; civil fruits derived from Defendants' trespass under La. Civ. Code art. 486; nuisance damages, including loss of full use and enjoyment; damages for loss of use of land and lost profits and income; attorney's fees; and personal injuries caused by exposure to toxic substances. *Id.* at 8. And they seek a prohibitory and mandatory permanent injunction requiring Defendants to remove the contamination they caused to be deposited in the groundwater and soils underlying Plaintiffs' land. *Id.*

Defendants removed, asserting diversity jurisdiction. ECF No. 1. Defendants allege that Plaintiffs are citizens of Colorado and Louisiana, and that the properly joined Defendants are citizens of Delaware, Massachusetts, New York, Ohio, Texas, and the Netherlands. *Id.* at 2. Defendants further allege it is "facially apparent" that the claims are above $75,000. *Id.*

Defendants contend that the in-state Defendants Descant and LDEQ are improperly joined such that removal is proper. *Id.* at 6. Plaintiffs have no possibility of recovering against LDEQ or Descant, and their citizenship is irrelevant in determining jurisdiction, according to Defendants. *Id.*

Plaintiffs now seek remand for lack of diversity jurisdiction, arguing that Defendants' removal is deficient because Plaintiffs have properly alleged causes of action against LDEQ and Descant. ECF No. 14. Defendants oppose. ECF No. 25.

II.   <u>Law and Analysis</u>

A.   <u>Remand is required where a court lacks subject matter jurisdiction.</u>

A federal court's jurisdiction is limited to areas authorized by the United States Constitution and acts of Congress. *See Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014). Subject matter jurisdiction must exist at the time of removal, based on the facts and allegations contained in the complaint. *See St. Paul Reinsurance Co. Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). A federal court has "diversity jurisdiction" where the amount-in-controversy exceeds $75,000, exclusive of interest and costs, and where complete diversity exists between the parties. *See* 28 U.S.C. § 1332(a).

Remand is required "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). The removing party bears the burden of establishing diversity jurisdiction. *See Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013). "Any ambiguities are construed against removal and in favor of remand to state court." *Id.*. Here, the parties do not dispute whether the amount-in-controversy requirement is met, but dispute whether there is complete diversity among the parties.

B.   <u>Defendants bear the burden of establishing improper joinder.</u>

The issue here is the alleged improper joinder of LDEQ and Descant, both non-diverse Defendants. ECF Nos. 1, 14. The doctrine of improper joinder is a narrow exception to the complete diversity requirement. *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011). The removal statutes "entitle a

defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'" *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (citing 28 U.S.C. § 1441(b)).  "[T]he focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Id.*

"To establish improper joinder, the removing party must demonstrate either: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Cuevas*, 648 F.3d at 249 (quoting *Smallwood*, 385 F.3d at 573).  When, as here, the second method is at issue,

> the test is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant. If there is no reasonable basis of recovery, then the court can conclude that the plaintiff's decision to join the in-state defendant was indeed improper, unless that showing compels the dismissal of all defendants.

*Cuevas*, 648 F.3d at 249 (internal citations and quotations omitted) (emphasis added).[4]  "A mere theoretical possibility of recovery in state court will not preclude a finding of improper joinder." *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014).

The removing party "bears a heavy burden of proving that the joinder of the in-state party was improper . . . that is, to show that sham defendants were added to defeat jurisdiction." *Smallwood*, 385 F.3d at 574-75; *see also Travis v. Irby*, 326 F.3d

---

[4] Defendants do not allege there is actual fraud in the pleadings.

644, 649 (5th Cir. 2003). A court does not determine whether a plaintiff will actually or even probably prevail on the merits of the claim, but looks only for a possibility that a plaintiff might do so. *Guillory v. PPG Indust., Inc.*, 434 F.3d 303, 309 (5th Cir. 2005) (citations omitted). "Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Smallwood*, 385 F.3d at 574.

C. **A "Rule 12(b)(6)-type" analysis is appropriate to determine whether Plaintiffs' Complaint (ECF No. 1-2) states a viable claim against non-diverse Defendants LDEQ and Descant.**

Defendants argue Plaintiffs have no possibility of recovery, or "no reasonable basis" of recovery, against non-diverse Defendants LDEQ and Descant. ECF No. 1 at 6. The "no reasonable basis" contest may take place in two different settings. In the first, a defendant challenges the adequacy of a plaintiff's pleadings without the submission of evidence. A court then conducts a "Rule 12(b)(6)-type" analysis to determine whether the complaint states a viable claim against the in-state defendant. *Smallwood*, 385 F.3d at 573 (citations omitted).

However, merely pleading a valid (or arguable) state law claim, or one whose validity is reasonably arguable, against the resident defendant is not always enough. *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004) (citations omitted). In the second setting for the "no reasonable basis" contest, a defendant may challenge the plaintiff's allegations and attempt to demonstrate with "summary-judgment-type" evidence that the plaintiff is unable to prove all the facts necessary to prevail. *Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 818 F.3d

8

193, 207 (5th Cir. 2016). "[A] court may choose to use either one of these two analyses, but it must use one and only one of them, not neither or both." *Id.*; *see also Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) ("[T]he decision regarding the procedure necessary in a given case must lie within the discretion of the trial court.").

The Fifth Circuit cautions against piercing the pleadings, except in limited circumstances:

> Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.

*Smallwood*, 385 F.3d at 573 (citations omitted). Thus, the summary inquiry determines if there are "discrete and undisputed facts that would preclude recovery against the in-state defendant." *Id.* at 573-74 (citing as examples where "the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be disproved as not true"). A court may proceed beyond the pleadings to analyze "whether the defendant has demonstrated that there is no possibility of recovery." *Cumpian v. Alcoa World Alumina, L.L.C.*, 910 F.3d 216, 220 (5th Cir. 2018) (citing *Smallwood*, 385 F.3d at 573)). Although a court may consider "summary judgment-type evidence in the record," it must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the plaintiff. *Travis*, 326 F.3d at 649.

Here, no summary judgment-type evidence was submitted by the parties, and a "Rule 12(b)(6)-type" analysis is appropriate. The Court need not pierce the pleadings to determine whether the complaint states cognizable claims against LDEQ and Descant. *See Smallwood*, 385 F.3d at 573-74.

### D.   Plaintiffs fail to state a claim under Louisiana law against LDEQ and its joinder is improper.

Plaintiffs argue Defendants fail to establish improper joinder of LDEQ because they properly allege negligence against LDEQ. ECF No. 14-1 at 6-7, 11. The theories of negligence asserted against LDEQ include: (1) LDEQ's failure to inspect or monitor Dresser's Facility as required under La. R.S. 30:2012 to ensure proper disposal of hazardous waste, including TCE; and (2) LDEQ's failure to provide timely notice as required under La. Admin Code. tit. 33, Pt I, § 109. *Id.* at 13.

Plaintiffs assert LDEQ had non-discretionary duties: (1) under La. Admin Code. tit. 33, Pt I, § 109 to provide public notice within 30 days of when LDEQ knew or should have known the release of toxic TCE had an offsite impact and posed a significant risk of adverse health effects to Plaintiffs; and (2) under La. R.S. 30:2012 to inspect or monitor the Facility to ensure proper disposal of hazardous waste. *Id.* at 8.

The parties dispute whether the notice provisions under La. Admin Code. tit. 33, Pt I, § 109 are discretionary, thus entitling LDEQ to immunity under La. R.S. 9:2798.1. Plaintiffs allege LDEQ violated the mandatory public notice provisions of La. Admin Code. tit. 33, Pt I, § 109. ECF No. 14-1 at 18. Plaintiffs allege LDEQ was informed of the off-site impact of TCE, a known carcinogen, in 2014, and failed to

10

notify the public, including Plaintiffs, within 30 days. *Id.* at 19. Plaintiffs contend that by 2014, LDEQ knew or should have known of the off-site impact and significant risk of adverse health effects to Plaintiffs. *Id.* at 8. And they assert that LDEQ failed to provide notice until 2020. *Id.*

Plaintiffs also contend La. R.S. 30:2012 prescribes that LDEQ perform "timely and meaningful inspections" of the Dresser Facility to ensure environmental compliance with the discharge of hazardous waste. *Id.* at 8, 16. Plaintiffs contend LDEQ failed to do so. *Id.* at 8. They assert that LDEQ has jurisdiction over matters affecting regulation of the environment, including air quality, water pollution control, and management of hazardous waste. *Id.* at 12 (citing La. R.S. 20:2011(A)(1)). And they argue LDEQ may be liable for its own negligence for damages sustained with the release of toxic contamination by failing to comply with its non-discretionary duties. *Id.* at 11-12 (citing cases).

Plaintiffs contend they do not assert LDEQ had a general duty to investigate or a duty to remediate. *Id.* at 13. Rather, they allege LDEQ had a non-discretionary duty expressly provided under the Act to ensure Defendants properly disposed of hazardous waste at the Dresser Facility, including checking waste disposal procedures and inspecting the Facility. *Id.* Plaintiffs state the Act mandates LDEQ "shall" conduct "[m]onitoring inspections of facilities operating with a permit . . . to

assure compliance with [the Act] and the regulations issued pursuant thereto[.]" *Id.* at 14 (citing La. R.S. 30:2012).[5]

Plaintiffs dispute that LDEQ is entitled to immunity under La. R.S. 9:2798.1. *Id.* They contest Defendants' argument that they fail to cite a statute, regulation, or policy that requires the LDEQ to use any particular method or procedure to investigate alleged ground water and soil contamination. *Id.* at 16. Plaintiffs argue they demonstrate a plausible claim for negligence based on LDEQ's breach of non-discretionary duties established under the Act. ECF No. 30 at 3. Plaintiffs argue that while La. R.S. 30:2012 allows some discretion in how inspections are handled, it requires LDEQ carry out those inspections. *Id.* (citing La. R.S. 30:2012(D)).

Even if the duty was discretionary, Plaintiffs argue the facts alleged show LDEQ's failure to monitor environmental compliance could not have been based on the policy of the regulatory regime or any other political, economic, or social policy given the magnitude of the TCE release. *Id.* at 3-4. Plaintiffs contend courts have routinely recognized that LDEQ may be held liable for its own negligence for damages sustained in connection with the release of toxic contaminants by failing to comply with La. R.S. 30:2012, even when the release is also the result of third-party conduct. *Id.* at 5. Plaintiffs contend their injuries are directly related to LDEQ's regulation of hazardous waste (specifically TCE) at the Dresser Facility. *Id.*

---

[5] Plaintiffs argue LDEQ's regulations identify TCE as a hazardous waste. *Id.* at 15 (citing La. Admin Code. tit. 33, Pt V, § 4901(B)). And they argue their allegations support a reasonable inference that LDEQ had a non-discretionary duty to ensure proper disposal of the hazardous waste at the Dresser Facility. *Id.* Plaintiffs argue the allegations suggest that Dresser was a permittee of the LDEQ subject to "timely and meaningful investigations and compliance monitoring." *Id.*

Plaintiffs further dispute Defendants' argument that Plaintiffs' recourse is through the Administrative Procedure Act, not in tort. ECF No. 14-1 at 21. Plaintiffs cite cases in which parties pursued tort claims against the LDEQ. *Id.* (citing cases). And Plaintiffs distinguish *Butler v. Denka Performance Elastomer LLC*, 2019 WL 1160814 (E.D. La. Mar. 13, 2019). *Id.* Plaintiffs assert they are not challenging the LDEQ's "final decision" on a permit application (as in *Butler*) and thus *Butler* has no impact on their ability to sue for negligence. *Id.* at 23. Plaintiffs insist they have recourse in tort.

Plaintiffs also argue this Court's decision in *D&J Investments of Cenla LLC v. Baker Hughes A GE Co., LLC*, 501 F.Supp.3d 389 (W.D. La. Nov. 18, 2020) is distinguishable. *Id.* at 24. Plaintiffs contend that, unlike the plaintiffs in *D&J Investments*, they identify a specific duty of the LDEQ to provide notice of the contamination under La. Admin. Code. tit. 33, Pt I, § 109. *Id.* Plaintiffs dispute the findings by this Court in *D&J Investments*, and they contend there is no prohibition against suing LDEQ for damages caused by LDEQ's own negligent conduct, including negligent failure to monitor or notify. *Id.* at 25.[6]

Plaintiffs argue the case relied on by Defendants for the proposition that their discretion is grounded in policy does not arise in the context of a motion to remand. ECF No. 30 at 2. Thus, Plaintiffs argue Defendants cannot rely on the presumption "that when government employees exercise discretion given to them by a statute or

---

[6] Plaintiffs contend that Defendants fail to address their assertion that La. R.S. 30:2271(A)(4) should be interpreted to mean that LDEQ will not be responsible for the misconduct of *others*, but it does not prohibit liability for LDEQ's *own* negligent conduct. ECF No. 30 at 5-6.

regulation, they are doing so based on the same policy concerns that animate the controlling statute or regulation itself." *Id.* Plaintiffs contend the 6-year delay by LDEQ to provide Plaintiffs notice of the off-site impact was negligent, and not "grounded in the policy of the regulatory regime" or in any other "political, economic, or social policy." *Id.* at 2-3.

Defendants maintain that Plaintiffs' claims against LDEQ for failure to warn and inspect are not actionable in tort. ECF No. 25 at 9. Defendants argue the "power exercised by LDEQ is inherently discretionary." *Id.* at 10. And they assert that discretionary duties cannot serve as the basis for liability, as LDEQ is entitled to immunity under La. R.S. 9:2798.1. *Id.*

Specifically, Defendants argue the alleged duty to warn contained in Section 109 and the alleged duty to inspect contained in La. R.S. 30:2012 are discretionary and cannot serve as the basis for tort liability. *Id.* at 11-14. Defendants further argue Plaintiffs rely on La. R.S. 30:2012 for the alleged duty to inspect or monitor, but correctly point out the Compliant is void of any allegations under La. R.S. 30:2012. *Id.* at 12. Regardless, Defendants contend the duties under La. R.S. 30:2012 are discretionary. *Id.* And they note that the Louisiana Supreme Court held that "[e]ven assuming that [LDEQ] has some duty to monitor landfills for compliance with permit regulations, *that duty does not extend to third parties (especially where the third party's injury is unrelated to the regulation of environmental conditions)." Id.* at 13-

14 (citing *Williams v. Galliano*, 703 So. 2d 1283 (La. 1997) (mem. op.) (emphasis added)).[7]

Applying a "Rule 12(b)(6)-type" analysis, the Court must determine whether the "complaint . . . contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Waste Mgmt., Inc. v. AIG Specialty Ins. Co.*, 974 F.3d 528, 533 (5th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). In applying this standard, the Court must "[accept] all well-pleaded facts as true and [view] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010).

In the related case cited previously, this Court denied a similar motion to remand for the landowners' failure to state a cognizable negligence claim under Louisiana law against LDEQ. *See D & J Investments of Cenla LLC v. Baker Hughes A GE Co., LLC*, 501 F. Supp. 3d 389 (W.D. La. Nov. 18, 2020). LDEQ was improperly joined and its presence was disregarded for purposes of diversity jurisdiction. *Id.* The Court reasoned as follows:

> Federal jurisprudence is clear that "a state is not a 'citizen' for purposes of diversity jurisdiction." *Tradigrain, Inc. v. Mississippi State Port Auth.*, 701 F.2d 1131, 1132 (5th Cir. 1983). It follows that in an action where a state is a party, § 1332 generally does not provide a basis for subject matter jurisdiction. *See Allen v. C & H Distributors, L.L.C.*, 813 F.3d 566, 571 (5th Cir. 2015) ("Ordinarily '[i]n an action where a state is a party, there can be no federal jurisdiction on the basis of diversity of citizenship because a state is not a citizen for purposes of diversity

---

[7] The Eastern District of Louisiana rejected the use of La. R.S. 30:2012 as a vehicle to hold LDEQ liable. *Id.* at 14 (citing *Butler v. Denka Performance Elastomer LLC*, No. 18-6685, 2019 WL 1160814, at *7 (E.D. La. Mar. 13, 2019)).

jurisdiction.' "). Likewise, an entity that is "merely an alter ego of the state," such as the DEQ, is not considered a citizen under § 1332. *See Watkins v. Louisiana Dep't of Transp. & Dev.*, CIV.A. 09-1743, 2010 WL 744911, at *2 (W.D. La. Feb. 26, 2010) (holding that the Louisiana Department of Transportation and Development is "equivalent to the State of Louisiana for purposes of determining diversity of citizenship.").

*Id.* at 395.

Citing La. R.S. 30:2011(A)(1), the Court also noted the landowners failed "to demonstrate how the statutory and state constitutional provisions give rise to a specific duty on the part of DEQ to inform them of reported contamination within a particular timeframe or to otherwise see remediation in any particular manner." *Id.* at 397 (also noting Louisiana statutes indicate the Louisiana legislature intended for DEQ to serve in a purely regulatory capacity and not to bear civil liability for environmental harm by private parties). Clear policies support the statute:

> It is against public interest for Louisiana's chief environmental regulator, when determining how to allocate its scare resources, to prioritize its efforts in consideration of the potential for civil liability rather than of the Louisiana citizens or natural resources that face the gravest environmental threats . . . and creating or permitting such a private cause of action would, in effect, make the DEQ beholden first to those citizens or landowners who are able to afford attorneys, to those from whom the DEQ is fearful of being sued, or to those who otherwise may have the loudest voices or wield the most influence. Indeed . . . Louisiana law does not permit a plaintiff to recover damages from the State for exposure to contamination caused by private industry.

*Id.*

In a subsequent ruling, the Court also recognized that "while the Louisiana Administrative Code does set forth timeframes for public notification, the application of these timeframes to specific instances of contamination is left solely to the discretion of the DEQ." *D & J Investments of Cenla, LLC v. Baker Hughes a GE Co.,*

*LLC*, 1:20-CV-01174, 2021 WL 3553509, at *4, n.10 (W.D. La. Aug. 11, 2021). The provisions provide for public notification "to be issued when 'reasonably determined by [the DEQ] to be appropriate in accordance with the considerations identified in this Chapter . . . to persons whom the [DEQ] reasonably determines are likely to be adversely affected by the release [of hazardous substances or pollutants].'" *Id.* (citing La. Admin Code. tit. 33, Pt I, § 109).

As is the case in multiple related actions, Plaintiffs citing the same statutory provisions previously rejected by this Court. However, for the same reasons set forth in *D & J Investments of Cenla, LLC*, and in keeping with this Court's rulings in related cases, the Court here again finds Plaintiffs fail to state a cognizable claim for relief against LDEQ.

Although Section 109 does mandate notification to the public, the plain language of the statue provides discretion to LDEQ that such notice is "for sites within the department's regulatory jurisdiction, as reasonably determined by the department to be appropriate in accordance with the considerations identified in this Chapter." La. Admin Code. tit. 33, Pt I, § 109(A). And it provides discretion, allowing the LDEQ to issue notice of a release "to persons whom the department reasonably determines are likely to be adversely affected by the release." La. Admin Code. tit. 33, Pt I, § 109(B). Section 109 also gives LDEQ discretion as to the type, location(s), and timing of the notice it chooses to provide. La. Admin Code. tit. 33, Pt I, § 109(C).

Moreover, for the reasons previously observed by this Court, the duties cited by Plaintiffs under the Act are discretionary. *See D & J Investments of Cenla LLC*,

17

501 F. Supp. 3d at 397; *see also State of La. v. Public Investors, Inc.,* 35 F.3d 216, 220–21 (5th Cir.1994) ("There is a presumption that when government employees exercise discretion given to them by a statute or regulation, they are doing so based on the same policy concerns that animate the controlling statute or regulation itself."). Legislators and judges alike have recognized as much.

Plaintiffs disagree with Defendants' reliance on *Williams v. Galliano*, 703 So.2d 1283 (La. 1997). ECF No. 30 at 4-5. Plaintiffs argue that the Eastern District of Louisiana has rejected similar arguments by defendants. ECF No. 30 at 4-5 (discussing *Sarpy v. Energen Res.*, No. Civ. A. 05-1860, 2005 WL 2036880 (E.D. La. Jul. 25, 2005). That court distinguished *Williams*, noting in that "the plaintiffs' alleged injuries [were] directly related to the regulation of the environmental conditions[.]" *Id.* (citing *Sarpy*, 2005 WL 2036880, at *3).

In this case, however, "Plaintiffs make no claim under the Environmental Quality Act, La. Rev. Stat. 30:2001, *et seq.*, which is inapplicable to the claims asserted herein." ECF No. 1-2 at 9. And this Court observed in *D&J Investments* that Louisiana's two other federal district courts have relied on La. R.S. 30:2271(A)(4) in concluding that LDEQ is not liable in tort for failing to properly handle contaminations. *D&J Investments of Cenla, LLC*, 501 F.Supp.3d at 398 (citing *Butler*, 2019 WL 1160814, at *6, *Landry v. Laney Directional Drilling Co.*, 2009 WL 3833831, at *4 (M.D. La. Nov. 16, 2009)).

Lastly, while Plaintiffs also try to distinguish their claims from *Butler*, the court similarly rejected similar allegations under La. R.S. 30:2012. *See* 2019 WL

18

1160814, at *7.  The *Butler* court's conclusion was plain: Plaintiffs' allegations that LDEQ "failed to follow its statutory obligations to routinely test and sample air quality failed to state a sufficient claim for relief."  *Id.*  The court reasoned that the affirmative duty to comply with LDEQ's compliance monitoring strategy under La. R.S. 30:2012 lies with facilities and permit holders.  *Id.*

Defendants have met their burden of establishing improper joinder of LDEQ. Thus, LDEQ's presence should be disregarded in determining complete diversity among the properly joined parties.

### E.    Plaintiffs fail to state a viable claim under state law against Descant.

Plaintiffs argue Defendants fail to establish the improper joinder of Descant because Plaintiffs properly allege negligence against Descant.  ECF No. 14-1 at 6-7, 28.  Plaintiffs contend that an employee may be held liable for a work-related function under the doctrine established in *Canter v. Koehring*, 283 So.2d 716, 721 (La. 1973). *Id.* at 26-27.  They argue that Defendants owed Plaintiffs a duty of care to contain the TCE to its property; that Defendants delegated that duty to Descant; and that Descant, through his personal negligence, failed to keep TCE contained to the site. *Id.* at 27.

Plaintiffs contest Defendants' argument that the allegations against Descant are identical to those dismissed in *Wahlder*.  *Id.*  Plaintiffs assert that, in *Wahlder*, the plaintiffs did not allege that negligence caused personal injury as required under the *Canter* doctrine. *Id.*  Plaintiffs also seek to distinguish their allegations from the fourth element described in *Canter* by arguing they do not base their assertions solely

on Descant's position as manager. ECF No. 30 at 6-7. They contend Descant was personally negligent in failing to carry out the duty to warn delegated to him by Defendants. *Id.*

Plaintiffs also take issue with Defendants' reliance on this Court's decision in *Barrett v. Dresser, LLC*, No. 1:20-CV-01346, 2021 WL 53658 (W.D. La. Jan. 6, 2021). ECF No. 14-1 at 28. Plaintiffs dispute those findings, specifically the conclusion that "Louisiana does not recognize the failure to contain or remediate contamination as a separate and distinct claim." *Id.* Plaintiffs argue they properly allege a cause of action against Descant for liability under *Canter*. *Id.* And they contend Defendants fail to show "there is no possibility of recovery" by Plaintiffs against Descant. *Id.* at 28-29.

Defendants respond that Louisiana law strictly limits situations in which an employee may be held individually liable for actions taken in the course of his or her employment. ECF No. 25 at 17. Defendants argue the factual allegations against Descant are scant, and even assuming the allegations are true, Louisiana law does not afford Plaintiffs a cause of action for his alleged "actions/inactions." *Id.*[8]

In Defendants' estimation, Plaintiffs' allegations for "personal injuries" are conclusory and Louisiana does not recognize a separate and distinct claim for failure to contain. *Id.* at 19-20. It was not Descant's breach of a purported duty to contain a spill that caused Plaintiffs' damages. Rather, it was the allegedly improper waste

---

[8] Defendants also note that this Court has dismissed nearly identical claims against Descant in a related matter. *Id.* (citing *Wahlder v. Baker Hughes, Inc., et al.*, 1:20-CV-00631 (W.D. La. Jul. 29, 2020)).

disposal practices employed during operations at the Facility (in which Descant was not involved). *Id.* at 21. Defendants contend that because there is no separate duty to contain, Plaintiffs' claims against Descant fail under *Canter*. *Id.* at 21-22.

In *Canter*, the Louisiana Supreme Court established four criteria that must be met for an employee to be "individually liable to a third person by reason of the individual's breach of the employment-imposed duty." *Canter*, 283 So.2d at 721. An employee is personally liable only when: (1) the employer owes a duty of care to the third person, the breach of which has caused the damage for which recovery is sought; (2) that duty was delegated by the employer to the employee; (3) the employee breached that duty through personal (not technical or vicarious) fault; and (4) the employee had a personal duty toward the injured third party, the breach of which specifically caused the third party's damages. *Id.*

An employee cannot be held liable simply because of his general administrative responsibility for performance of some function of employment. *Id.* Furthermore, *Canter* only establishes an employee's liability for bodily injury damage. *See Kling Realty Co., Inc. v. Chevron USA, Inc.*, 575 F.3d 515-16 (5th Cir. 2009) (concluding that plaintiffs could not assert a claim against Chevron's field supervisor because plaintiff's sole claims were "economic and emotional damage – damage to his property and various forms of mental distress").

In a related case, this Court held that plaintiffs were unable to maintain a separate negligence claim for failure to contain or remediate because, in a phrase, that is not an act of negligence separate and apart from the defendants' failure to

prevent the conduct causing the alleged contamination. *Jacques v. Baker Hughes*, 1:21-CV-00315, 2021 WL 1271027, at *5 (W.D. La. Apr. 6, 2021) (citing *Marin v. Exxon Mobil Corp.*, 2009-2368, p. 28 (La. 10/19/10); 48 So.3d 234, 254; *Hogg v. Chevron USA, Inc.*, 2009-2632, pp. 22–23 (La. 7/6/10); 45 So.3d 991, 1007)). The initial leakage – not the failure to "contain or remediate" – is the operative cause of the plaintiff's injury. *Id.*

Plaintiffs seek to recover for property damage. ECF No. 1-2 at 7. They also claim they "suffered personal injury from the toxic pollution on their property." *Id.* However, Plaintiffs do not allege with specificity whether they seek to recover for bodily injuries, and do not specify what bodily injuries they may have sustained. Plaintiffs' generalized allegations for "personal injury" are insufficient to assert a claim against Descant. *See Kling Realty Co., Inc.*, 575 F.3d at 515-16.

Regardless, Plaintiffs also fail to adequately allege delegation of duty to Descant. They state that Descant – as Environmental, Health, and Safety manager – failed to keep the toxic substances contained to the site, constituting negligence. *Id.* They assert Descant was negligent in causing the spill; in failing to properly inspect and monitor the Spill; in acting in a careless and negligent manner without due regard for the safety of others; in failing to properly train their personnel; in failing to take appropriate action to avoid or mitigate the escape of TCE from the Site; in failing to react to danger signs; in failing to design a properly remediation plan; in failing to timely notify Plaintiffs of the contamination; in failing to perform proper

remediation; and "such other acts of negligence and omissions as will be discovered." *Id.*

Even in the aggregate, these allegations amount to a "general administrative responsibility for performance of some function of employment."  Plaintiffs fail to allege any personal duty, failure, or unique knowledge. *See Canter*, 283 So.2d at 721.

Thus, Plaintiffs fail to state a viable claim against Descant, and Defendants establish there is no reasonable basis for the Court to predict Plaintiffs might be able to recover against Descant.  Descant is also improperly joined.

## III.  <u>Conclusion</u>

Because LDEQ and Descant are improperly joined, and there is complete diversity among the properly joined parties;[9]

IT IS RECOMMENDED that Plaintiffs' Motion to Remand (ECF No. 14) be DENIED.

IT IS FURTHER RECOMMENDED that Plaintiffs' claims against LDEQ and Descant be DISMISSED WITHOUT PREJUDICE.[10]

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), any party may serve and file with the Clerk of Court written objections to this Report and

---

[9] Here, it is undisputed that Plaintiffs are citizens of Louisiana and that the remaining properly joined parties are citizens of Delaware, Massachusetts, New York, Ohio, Texas, and the Netherlands.  *See* ECF Nos. 1 at 2, 14.  It is also undisputed that the jurisdictional threshold is met.

[10] Because an improper joinder adjudication concerns the issue of jurisdiction rather than the merits, "the dismissal of a nondiverse party over whom the court does not have jurisdiction must be a dismissal without prejudice in every instance. *See Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 818 F.3d at 209.

Recommendation within fourteen (14) days after being served with a copy thereof, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections or reply briefs) may be filed, unless a party shows good cause and obtains leave of court. The District Judge will consider timely objections before issuing a final ruling.

A party's failure to file written objections to the proposed factual findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days after being served with a copy thereof, or within any extension of time granted by the Court under Fed. R. Civ. P. 6(b), shall bar that party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

SIGNED on Tuesday, August 31, 2021.

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE